# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **Tyrone Mock,** | **Case No. 4:22-cv-00937** |
| **Petitioner,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge James E. Grimes Jr.** |
| **Warden Charmaine Bracy[1],** | |
| **Respondent** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge James E. Grimes Jr. (Doc. No. 15), which recommended denying the Petition of Writ of Habeas Corpus filed by Petitioner Tyrone Mock ("Mock") pursuant to 28 U.S.C. § 2254 and denied Mock's Motion for Evidentiary Hearing (Doc. No. 10) and Motion to Set Bond (Doc. No. 11).  Mock has filed Objections to the R&R.  (Doc. No. 21.)

On January 2, 2024, Mock filed a "Motion to Compel Respondent (State of Ohio) to Correct and Complete the Record of All the Missing Numerical Pages, But Not Limited To (818-819,1120-1145, 1608-1639) in the Discovery that Petitioner Ask for Diligently" ("Motion to Compel"), to which Respondent filed a Response on January 17, 2024.  (Doc. Nos. 22, 23.)  Mock did not file a Reply.

For the following reasons, Mock's Objections (Doc. No. 21) are OVERRULED and the Magistrate Judge's R&R (Doc. No. 15) is ACCEPTED as set forth herein.

---

[1] Petitioner Tyrone Mock is currently incarcerated in the Southern Ohio Correctional Facility ("SOCF").  (Doc. No. 24.) Cynthia Davis is the warden of SOCF, and as such, is substituted as the proper Respondent in this case.  *See* 28 U.S.C. § 2244 ("The writ . . . shall be directed to the person having custody of the person detained.").

## I.    Procedural History

As the relevant facts and underlying state court procedural history[2] were set forth at length in the Magistrate Judge's R&R,[3] they will not be repeated in full herein.  (Doc. No. 15.) *See also State v. Mock*, 106 N.E.3d 154, 156–59 (Ohio App. 8th Dist. 2018).

---

[2] Mock asserts that the Magistrate Judge's recitation of the procedural history includes several errors relating to the state appellate court's summary of the trial proceedings.  (Doc. No. 21 at PageID#s 3217–19, 3228.)  The facts as presented in the "last reasoned state-court opinion" are "presumed to be correct" and can only be rebutted by "clear and convincing evidence." *Gibbs v. Huss*, 12 F.4th 544, 546 (6th Cir. 2021). *See also* 28 U.S.C. § 2254(e)(1).  Here, the Magistrate Judge recited the relevant portions of the procedural history from the last-reasoned state court opinion, i.e., the Ohio Court of Appeals for the Eighth District, that discussed Mock's trial proceedings in detail.  (Doc. No. 15 at PageID#s 3046–50.) Mock does not provide clear and convincing evidence to demonstrate any alleged error in the state appellate court's summary of the trial proceedings.  (*Id.*)  Further, Mock's concerns or alleged errors have no bearing on timeliness, diligence, or any other relevant aspect of the Magistrate Judge's R&R.  Accordingly, the Court rejects Mock's objections on these grounds.

Mock also challenges the Magistrate Judge's discussion of "the jury notes and the Judge[']s answers to the notes," arguing that they were not actually part of the record as the R&R indicated.  (Doc. No. 21 at PageID# 3228.)  The Court thoroughly addresses this argument below.

[3] The Court makes two minor clarifications to the Magistrate Judge's procedural history as set forth in his R&R.  In his Petition, Mock referred to his supplemental filings as "supplemental motions," and the Magistrate Judge stated that Mock had filed "three suppression motions." (Doc. No. 5-1, Exs. 16, 18; Doc. No. 15 at PageID# 3049.)  However, in the trial court's journal entry, the trial court only referred to "Defendant's motion to suppress." (Doc. No. 5-1, Ex. 19 at PageID# 277.)  Additionally, Mock's two supplements merely included additional grounds for finding that the search warrant was defective. Therefore, the Court construes Mock's supplemental "motions" as supplements to his initially filed motion to suppress, and not as separate motions.

Additionally, the Magistrate Judge cited to Mock's "motion for a new trial" as the motion that was denied by the trial court instead of Mock's "motion for order finding he was unavoidably prevented from filing a motion for new trial . . . and motion for leave to file a delayed motion for new trial" ("motion for leave").  (*See generally* Doc. No. 15.)  The arguments set forth in Mock's motion for a new trial and motion for leave concerning the newly discovered evidence, including his *Brady* and similar assertions, are substantively identical. (Doc. No. 5-1, Ex. 50; Doc. No. 5-2, Ex. 51.) However, the trial court denied Mock's "*motion for leave*," and as such declined to allow Mock to file his motion for a new trial.  (Doc. No. 5-2, Ex. 56 (emphasis added).)  The appellate court acknowledged Mock's *Brady* arguments but nevertheless affirmed, on the state law basis that Mock had failed to show that he was unavoidably prevented from timely requesting a new trial, the trial court's decision to not allow Mock to file a motion for a new trial.  (*Id.*, Ex. 64.)  Therefore, in its analysis herein the Court will refer to the trial court's denial of Mock's motion for leave, as distinguished from his motion for a new trial.

On June 1, 2022,[4] Mock filed a *pro se* Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  In his Petition, Mock raises the following grounds for relief:

> GROUND ONE: Petitioner was deprived fundamental fairness of due process of law, the right to a fair trial and the protection of the 4th and 14th Amendments to the U.S. Constitution when the trial court failed to provide a full and fair hearing and an appropriate ruling and adjudications on his motions to suppress evidence, supplemental motion to suppress evidence, and *pro se* supplemental motion to suppress evidence, violations of (*Franks v Delaware*) with findings of fact and conclusions of law relevant to his constitutional issues concerning instillation of GPS tracking device.

> GROUND TWO: Petitioner was deprived fundamental fairness of due process of law due to the prosecution before and after trial intentionally failing to disclose through discovery relevant in nature (evidence that was attested by detective Witalis) material, exculpatory evidence related to indicted accomplice/co-defendant CI#2 D.H. in violation of Petitioner's rights under the 4th, 5th, 6th & 14th Amendments to the U.S. Constitution clearly (*Brady v Maryland*) violations.

> GROUND THREE: Petitioner was deprived fundamental fairness of due process of law when Petitioner was denied the effective assistance of counsel and a fair trial as guaranteed by the 6th & 14th Amendments to the U.S. Constitution, violations of (*Strickland v Washington*) when trial counsel failed to conduct pre-trial investigations and interview crucial witnesses and failed to file a motion to suppress evidence obtained via a deficient and invalid search warrant to search and seize the contents of a computer and the warrantless search and seizure of cell phone contents in violation of Petitioner's 4th & 14th Amendment rights.

> GROUND FOUR: Petitioner was denied fundamental fairness and due process of law under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when he was not permitted review of his issues for new trial based on new affidavit evidence from the attorney for Confidential Informant #2, D.H., the material sole factor used to establish probable cause for search warrants, Tammy Jordan, and Atty. David Patterson who interviewed Brandon Fambro, which disproved any nexus for probable cause, The Motion for New Trial under Criminal Rule 33 was denied based on a finding that the Petitioner was not unavoidably delayed in discovering issues that involved clearly encompassed ongoing violations as defined in (*Brady v Maryland*)

---

[4] Under the mailbox rule, the filing date for a *pro se* habeas petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).  While Mock's Petition was docketed on June 3, 2022, Mock states that he placed it in the prison mailing system on June 1, 2022.  (Doc. No. 1 at PageID# 29.)  Therefore, the Court will consider the Petition as filed on June 1, 2022.  *See Thompson v. Harris*, 2021 WL 3507646, at *5 n.1 (N.D. Ohio Aug. 10, 2021).

police and prosecutorial misconduct consistent with *Napue v Illinois*), Petitioner was denied a fair trial under the rights granted by the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

GROUND FIVE: Petitioner was denied fundamental fairness of due process of law under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution when he was not permitted review of his issues, in Petitioners Motion for New Trial, under Criminal Rule 33 based on a finding that the Petitioner was not unavoidably delayed in discovering previous undisclosed jury questions and the courts answers for new trial, based on the new discovery of evidence exposing material and prejudicial *ex parte* communications between the trial court and the jury, without notice and opportunity to be heard, which also constitutes structural error because Petitioner had a right to be represented by counsel at all critical stages and tried by an impartial jury without irregularities in the proceedings. Thereby committing judicial misconduct.

(Doc. No. 1 at PageID#s 11, 14, 17, 20, 24.)

Respondent Charmaine Bracy ("Respondent") filed a Return of Writ on September 21, 2022.

(Doc. No. 5.)  On January 23, 2023, Mock filed a Traverse/Answer to Respondent's Return of Writ.

(Doc. No. 9.)

On February 16, 2023, Mock filed a Motion for an Evidentiary Hearing, and on February 21, 2023, Mock filed a Motion to Set Bond.  (Doc. Nos. 10, 11.)  Respondent filed an Opposition to Mock's Motion for an Evidentiary Hearing and Motion to Set Bond.  (Doc. Nos. 12, 13.)  Mock filed a Reply only in support of his Motion for Evidentiary Hearing, and did not file a Reply in support of his Motion to Set Bond. (Doc. No. 14.)

On May 19, 2023, the Magistrate Judge issued an R&R, recommending that Mock's Petition be denied in its entirety.  (Doc. No. 15.)  The Magistrate Judge also denied Mock's Motion for an Evidentiary Hearing and Motion to Set Bond.  (*Id.* at PageID# 3079 n.14.)[5]

---

[5] Mock does not dispute or challenge the Magistrate Judge's denial of his Motion to Set Bond.

On August 31, 2023, with the Court's leave, Mock filed his Objections to the Magistrate Judge's R&R. (Doc. No. 21.)[6] Respondent did not file a Response to Mock's Objections.

On January 2, 2024, Mock filed his Motion to Compel. (Doc. No. 22.) On January 17, 2024, Respondent filed an Opposition to Mock's Motion to Compel. (Doc. No. 23.) Mock did not file a Reply.

## II. Standard of Review on Objections

Parties must file any objections to a report & recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2). Failure to object within this time waives a party's right to appeal the district court's judgment. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

"When a district judge reviews a magistrate judge's resolution of a non-dispositive matter, it is not a *de novo* review, as it is in relation to a magistrate judge's recommendation as to a dispositive matter." *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 2013 WL 992125, at *6 (S.D. Ohio Mar. 13, 2013). Rather, the Magistrate Judge's decision is subject to review under Rule 72(a) and reversal when it "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). *See* 237 F.3d at 603; *Alvarado v. Warden, Ohio State Penit.*, 2018 WL 5783676, at *1 (N.D. Ohio Nov. 5, 2018); *Phillips v. LaRose*, 2019 WL 5729919, at *2 (N.D. Ohio Nov. 5, 2019).

---

[6] Because the Magistrate Judge issued his R&R on May 19, 2023, Mock's objections were initially due by June 2, 2023. (*See* Doc. No. 15.) The Court granted Mock several extensions to file objections, eventually extending Mock's deadline to object to August 1, 2023. (Non-Document Order, June 8, 2023.) On August 11, 2023, Mock sent a letter to the Court indicating that he had mailed his objections on July 31, 2023. (Doc. No. 18.) On August 12, 2023, Mock filed his initial Objections to the R&R. (Doc. No. 19.) On August 17, 2023, Mock filed a Motion for Extension of Time to File Petitioner's Objections ("Motion for Extension"), requesting an additional 30 days to file objections and was accompanied by his re-filed Objections, which was docketed on August 31, 2023. (Doc. Nos. 20, 21.) On September 5, 2023, the Court granted Mock's Motion for Extension. Because Mock's August 31 Objections are identical to his initial Objections, the Court will only cite to Mock's August 31 Objections.

The clearly erroneous standard applies to factual findings, while legal conclusions are reviewed under the contrary to law standard. *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co*., 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009). As the Sixth Circuit has explained, "'[a] [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Bisig v. Time Warner Cable, Inc*., 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395 (1948)). "An order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id.* (quoting *United States v. Winsper*, 2013 WL 5673617, at *1 (W.D. Ky. Oct. 17, 2013)).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*. Fed. R. Civ. P. 72(b)(3). Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.* "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199, at *7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949–50).

When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b)(3), Advisory Committee Notes. *See also Thomas*, 474 U.S. at 150 (stating that "[i]t does not appear that Congress intended to require

6

district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")

## II. Legal Standards Regarding AEDPA Petitions

### A. Procedural Requirements

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326–27, 337 (1997). An individual filing a petition under the AEDPA must meet certain procedural requirements to have his claims reviewed in federal court. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).

### i. Statute of Limitations

The AEDPA provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court. *See* 28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(1), the limitations period runs from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

7

28 U.S.C. § 2244(d)(1).  The AEDPA further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

### ii.  Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).  A petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  *Maupin,* 785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138–39*; Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002).  "To inform this inquiry, we look to the last explained state court judgment."  *Stojetz v. Ishee*, 892 F.3d 175, 191 (6th Cir. 2018) (internal quotation marks and citations omitted).  If, due to a petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.  *Id.*

8

Where a petitioner has procedurally defaulted claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Demonstrating cause requires showing that an "objective factor external to the defense impeded counsel's efforts to comply" with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See also Gerth v. Warden, Allen Oakwood Corr. Inst.,* 938 F.3d 821, 830 (6th Cir. 2019). "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (citing *United States v. Frady,* 456 U.S. 152, 170–71(1982)). *See also Beuke v. Houk*, 537 F.3d 618, 634 (6th Cir. 2008).

### B.     Cognizable Federal Claim

Even if a petitioner meets the AEDPA's procedural requirements, under 28 U.S.C. § 2254(a), a state prisoner challenging his custody must be doing so "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus" and must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine

state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Further, a petitioner may not convert a claim asserting state law error into a constitutional claim merely by alleging that the failure to follow a state rule violated his due process rights. *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67–68); *see also Allen*, 845 F.2d at 614 (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure).

However, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey*, 500 F.3d at 521 (cleaned up). The habeas petitioner bears the

burden of showing "that the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental.  *Id.*

## III.  Analysis

### A.  Non-Dispositive Matters

#### 1.  Motion for an Evidentiary Hearing

On February 3, 2023, Mock filed a Motion for an Evidentiary Hearing pursuant to Rule 8 of the Rules Governing Section 2254 Cases.  (Doc. No. 10.)

As noted, in his R&R, the Magistrate Judge denied Mock's Motion for an Evidentiary Hearing.  (Doc. No. 15 at PageID# 3079 n.14.)

In his Objections, Mock contends that he should have been permitted an evidentiary hearing due to the State's violations of *Napue v. Illinois*, 360 U.S. 264 (1959), *Banks v. Dretke*, 540 U.S. 668 (2004), and *Brady v. Maryland*, 373 U.S. 83 (1963).  (Doc. No. 21 at PageID#s 3191–3217.)  Mock asserts that an evidentiary hearing is necessary "to determine whether a witness is telling the truth," referring to the allegedly false statements made in the affidavits of Lead Detective Craig Witalis ("Detective Witalis"); Detective William Duffy; Attorney Mitchell Yelsky, counsel for confidential informant D.H.; and Attorney David Patterson, Mock's appellate counsel, and to "prove perjury in bad faith on the detective's part."  (*Id.* at PageID#s 3193–94, 3196.)

When a petitioner requests an evidentiary hearing in a Section 2254 case, Rule 8 of the Rules Governing Section 2254 Cases[7] provides that "the judge must review the answer, any transcripts and

---

[7] Although Mock does not expressly reference it, another type of evidentiary hearing available to a Section 2254 petitioner lies in Section 2254(e)(2).  *See* 28 U.S.C. § 2254(e)(2).  In relevant part, an evidentiary hearing may be permitted where the petitioner "has failed to develop the factual basis of a claim in State court proceedings" if the factual predicate "could not have been previously discovered through the exercise of due diligence."  *Id.* § 2254(e)(2)(ii).  For the reasons discussed below, Mock has failed to demonstrate that the factual basis for his *Brady* claims in Grounds One through Four

records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." "Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citation and quotation marks omitted). But if a petitioner's grounds for relief can be resolved "by reference to the state court record" only, an evidentiary hearing is not required. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Id.* at 460 (quotation omitted).

The Court concludes that an evidentiary hearing is not warranted in this case. For the reasons discussed in detail below, the grounds for relief in Mock's Petition are either time-barred or not cognizable. Further, Mock does not explain how an evidentiary hearing will have any bearing or effect on the issues of timeliness or non-cognizability. Therefore, an evidentiary hearing on the substantive claims in Mock's Petition would serve no discernible purpose. *See Cope v. Warden, Ross Corr. Inst.*, 2017 WL 4402581, at *8 (S.D. Ohio Oct. 2, 2017); *accord Minor v. Wainwright*, 2019 WL 653789, at *8 (N.D. Ohio Jan. 17, 2019), *report and recommendation adopted*, 2019 WL 652411 (N.D. Ohio Feb. 15, 2019); *Scott v. Brunsman*, 694 F. Supp. 2d 771, 775 (N.D. Ohio 2010) (denying evidentiary hearing where petitioner's claims were procedurally defaulted). Accordingly, the Magistrate Judge did not err in denying Mock's Motion for an Evidentiary Hearing.

## 2. Motion to Compel

---

could not have been previously discovered through the exercise of due diligence, and therefore, Mock is not entitled to an evidentiary hearing under Section 2254(e)(2).

After the Magistrate Judge issued his R&R, Mock filed a Motion to Compel.  (Doc. No. 22.) In his Motion to Compel, Mock requests that the Court order Respondent to "correct and complete the [state court] record" by providing him with evidence pertaining to "pages" 818–19, 1120–45, and 1608–39, though Mock does not identify what part of the record these page ranges refer to.[8]  (*Id.* at PageID#s 3236, 3252.)  Elsewhere, Mock maintains that the State has failed to provide him with "improperly suppressed evidence," and that this evidence is necessary to resolve his Petition.  (*See generally id.*)  Mock appears to request that the Court compel Respondent to produce the alleged *Brady* evidence, i.e. the phone records, D.H.'s proffer letter, and the photo line-up/array.

Respondent argues that Mock's claims are time-barred, waived, not cognizable, procedurally defaulted, and/or meritless, and that it would therefore be unnecessary, futile, or otherwise improper to permit discovery as to these claims.  (Doc. No. 23 at PageID#s 3264–65.)  Respondent also contends that Mock's Motion to Compel "is overly broad and amounts to an effort to retry the case." (*Id.* at PageID# 3266.)

The Court agrees with Respondent.  Rule 7(a) of the Rules Governing Section 2254 Cases provides that "the Court may direct the parties to expand the record by submitting additional materials relating to the petition."  "The decision of whether to expand the record, however, is within the sound discretion of the district court."  *West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008); *see also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008).  In this case, Mock's Motion to Compel is essentially a recitation of the same *Brady* and *Napue* arguments he presents in his Petition, Traverse, Motion for

---

[8] Respondent insists that these page ranges refer to the PageID#s as provided by CM/ECF.  (Doc. No. 23 at PageID# 3262.)  However, these PageID#s in large part correspond to pages in the middle of, for example, Mock's indictment and state court briefings.  (*See* Doc. Nos. 5-1, 5-2.)  Presumably, Mock is not referring to his indictment or own briefings as the page ranges that need correction or supplementation.

13

Evidentiary Hearing, and Objections to the Magistrate Judge's R&R.  (Doc. Nos. 1, 9, 10, 21, 22.)
As the Court concludes below, the grounds for relief in Mock's Petition are either time-barred or not
cognizable.  In making these determinations, the Court need only rely on the provided state court
record, and evidence of Mock's alleged underlying *Brady* claims will not assist the Court in resolving
Mock's Petition.  Therefore, supplementing the record will not correct these deficiencies.  *See Newton
v. Turner*, 2024 WL 1853042, at *2 (N.D. Ohio Apr. 29, 2024).  Accordingly, Mock's Motion to
Compel is denied.[9]  (Doc. No. 22.)

> **B.  Dispositive Matters**

> **1.  Grounds One, Two, Three, and Four**

The Magistrate Judge recommended that review of Grounds One through Four is time-barred
under both Section 2244(d)(1)(A) and (D), and that Mock is not entitled to statutory tolling under
Section 2244(d)(2).  (Doc. No. 15 at PageID#s 3067–74.)  Mock only relies on subsections (A) and
(D) of Section 2244(d)(1), and therefore, as the Magistrate Judge concluded, only these two
subsections are applicable here.[10]  The Court will examine these sections, in turn, below.

> **a.  Section 2244(d)(1)(A) & Section 2244(d)(2)**

The Magistrate Judge first concluded that Mock's Petition was untimely under Section
2244(d)(1)(A) because it was filed more than one year after Mock's conviction and sentence became
final by conclusion of direct review or the expiration of the time for seeking such review.  (Doc. No.

---

[9] In his Objections to the Magistrate Judge's R&R, Mock similarly requests that the Court provide his requested *Brady* evidence even if he cannot use his evidence in the instant Petition.  (Doc. No. 21 at PageID# 3217.)  Because Mock has not shown that he is entitled to an expansion of the record, the Court finds no reason to order Respondent to provide any additional information and denies this request.

[10] Mock does not argue that the limitations period should commence at a later date for the reasons set forth in Section 2244(d)(1)(B) or (C).

21 at PageID# 3068.)  Specifically, the Magistrate Judge calculated that the Ohio Supreme Court declined to accept jurisdiction of Mock's appeal on June 6, 2018, and that Mock's direct review and appeals concluded 90 days later on September 4, 2018, and therefore, the AEDPA's one-year limitations period began to run the next day, or on September 5, 2018.  (*Id.*)

Mock does not specifically object to the conclusion that September 4, 2018 is the date that his conviction and sentence became final and direct review of his conviction and sentence was completed, making September 5, 2018 the date the one-year statute of limitations began to run.  The Court finds no clear error with the Magistrate Judge's conclusion that Mock's conviction and sentence became final, and his direct review was completed on September 4, 2018.  In the context of Section 2244(d)(1)(A), which provides that the one-year limitations period begins when direct review concludes, "direct review" has been interpreted "to encompass review of a state conviction by [the United States Supreme] Court."  *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003); *Little v. Sheldon*, 2023 WL 2666116, at *5 (N.D. Ohio Mar. 6, 2023), *report and recommendation adopted*, 2023 WL 2664291 (N.D. Ohio Mar. 27, 2023).  The United States Supreme Court provides a 90-day period for defendant to file a petition for a writ of certiorari.  Sup. Ct. R. 13.

As the Magistrate Judge noted, the record reflects that the Supreme Court of Ohio declined to accept jurisdiction of Mock's appeal of his conviction and sentence on June 6, 2018, and therefore Mock's 90-day timeframe for filing a petition for a writ of certiorari for direct review in the United States Supreme Court expired on September 4, 2018.  (Doc. No. 5-1, Ex. 49.)  Thus, Mock's conviction and sentence became "final" for purposes of Section 2244(d)(1)(A) on September 4, 2018.  *See Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006); *Moss v. Miniard*, 62 F.4th 1002, 1009 (6th Cir. 2023).  Accordingly, the limitations period began to run on the next day, September 5, 2018, and

15

Mock had until September 5, 2019, to file his Petition in federal court.  Therefore, absent tolling or a later start date for the limitations period, Mock's limitations period expired on September 5, 2019, and Mock's Petition, filed on June 1, 2022, is untimely.

The Magistrate Judge next concluded that Mock's Rule 33(B) proceeding, having been initiated after the completion of his direct appeals, was a "collateral proceeding" for purposes of Section 2244(d)(1)(A) and therefore could only "potentially toll the running of the statute of limitations" under Section 2244(d)(2) but could not "restart the clock."  (Doc. No. 15 at PageID# 3069.)

In his Objections, Mock asserts that his Rule 33(B) proceeding, which included his "motion for order finding he was unavoidably prevented from filing a motion for new trial . . . and motion for leave to file a delayed motion for new trial" ("motion for leave") and his motion for a new trial, was not a collateral proceeding, but rather a "direct attack 'upon the legality of that custody' made in the same—not collateral—proceeding."  (Doc. No. 21 at PageID# 3223.)

The Court agrees with the Magistrate Judge.  The Sixth Circuit has held that, in the context of federal habeas proceedings, "when a state defendant files a motion for new trial *before* filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding."  *Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009) (emphasis added).  But the Sixth Circuit also noted in *Pudelski* that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and that where post-conviction proceedings do "not in any way [relate] to [the petitioner's] confinement," they do not come "within the traditional scope of habeas corpus."  *Id.* at 608 (alterations in original) (citing *Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986))

16

(quotation marks omitted); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Indeed, generally, where a defendant seeks leave to file a motion for a new trial in state court "after the conclusion of direct review, it is considered a part of the State's collateral or post-conviction review process." *Phillips v. Warden, Noble Corr. Inst.*, 2019 WL 6830769, at *7 (S.D. Ohio Dec. 13, 2019), *report and recommendation adopted*, 2020 WL 132366 (S.D. Ohio Jan. 13, 2020); *Chamblin v. Warden*, 2016 WL 8679076, at *8 (S.D. Ohio June 24, 2016) (citations omitted), *report and recommendation adopted*, 2016 WL 4472770 (S.D. Ohio Aug. 25, 2016).

Here, Mock's motion for leave was not part of direct review, but rather a request for a collateral review.  As discussed above, Mock filed his motion for leave on December 14, 2018, three months after his direct appeals concluded on September 4, 2018.  (Doc. No. 5-1, Ex. 50.)  Because Mock filed his motion for leave after his direct appeals had concluded, his motion for leave was a part of the state collateral review process.  *See Anderson v. Warden, Grafton Corr. Inst.*, 2010 WL 1387504, at *6 (N.D. Ohio Mar. 9, 2010), *report and recommendation adopted*, 2010 WL 1387536 (N.D. Ohio Mar. 31, 2010); *Johnson v. Bradley*, 2017 WL 3961670, at *3 (S.D. Ohio Sept. 8, 2017), *report and recommendation adopted*, 2017 WL 3961670 (S.D. Ohio Sept. 8, 2017).  Accordingly, the filing of Mock's motion for leave could potentially toll the AEDPA's limitations period under Section 2244(d)(2) which began on September 5, 2018, but could not restart it for purposes of calculating the timeliness of Mock's Petition.  *See Anderson*, 2010 WL 1387504, at *6.

As the Magistrate Judge correctly noted, under Section 2244(d)(2), the AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).

17

"The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*

Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (observing that "time limits, no matter their form, are 'filing' conditions," and a state postconviction petition is therefore not "properly filed" if a postconviction petition is rejected by a state court as "untimely under state law"). Thus, "[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)." *Board v. Bradshaw*, 805 F.3d 769, 774 (6th Cir. 2015) (citing *Pace*, 544 U.S. at 414). "[W]hether an application [for state postconviction or other collateral review] has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." *Artuz v. Bennett*, 531 U.S. 4, 9 (2000) (emphasis in original).

Additionally, Section 2244(d)(2)'s tolling provision "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted). "Federal courts . . . defer to a state court's judgment on issues of state law and, more particularly, on issues of state procedural law." *Id.* at 603 (citing *Israfil v. Russell*, 276 F.3d 768, 7761 (6th Cir. 2001)) (quotation marks omitted).

18

The Magistrate Judge concluded that Mock's Rule 33(B) proceeding did not toll the AEDPA's limitations period, observing that the trial court "rejected Mock's motion because it was untimely" and therefore not properly filed. (*Id.* at PageID#s 3069–70.)  The Magistrate Judge further concluded that, even if it were properly filed, thereby tolling the AEDPA's statute of limitations, Mock's instant habeas Petition is still untimely. (*Id.* at PageID#s 3070–71.)

The Court concludes that Mock's motion for leave was not properly filed,[11] and therefore did not toll the AEDPA's limitations period.  Ohio Rule of Criminal Procedure 33(B) provides that:

> Motions for new trial on account of newly discovered evidence 'shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by *clear and convincing proof* that the defendant was *unavoidably prevented* from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

Ohio Crim. R. 33(B). (*See also* Doc. No. 5-2, Ex. 56 at PageID# 1516 (emphasis added).)  After the 120-day period, a defendant must obtain leave to file a motion for a new trial. *Brown v. Robinson*, 2020 WL 1536603, at *3 (S.D. Ohio Mar. 31, 2020).

In this case, the jury convicted Mock on August 19, 2016. (Doc. No. 5-1, Ex. 24.)  Mock filed his motion for leave on December 14, 2018, over two years after his conviction and nearly three months after his direct appeals had concluded. (*Id.*, Ex. 50; Doc. No. 5-2, Ex. 51.)  Therefore, for his

---

[11] Although Mock filed a "motion for a new trial" at the same time that he filed his "motion for leave," the state trial court denied Mock's motion for leave and, therefore, never considered the motion for a new trial; and that denial of the motion for leave was affirmed by the appellate court. (Doc. No. 5-2, Ex. 56.)  Where a "motion for leave to move for a new trial" is rejected as untimely pursuant to Rule 33(B), it is the motion for *leave*, as opposed to the motion for a *new trial*, that is rendered not "properly filed" under Section 2244(d)(2).  *See Davis v. Bradshaw*, 900 F.3d 315, 324 (6th Cir. 2018); *see also Anderson v. Warden, Grafton Corr. Inst.*, 2010 WL 1387504, at *2–3 (N.D. Ohio Mar. 9, 2010), *report and recommendation adopted*, 2010 WL 1387536 (N.D. Ohio Mar. 31, 2010) (finding "motion for leave to file a delayed motion for new trial" "not properly filed" because it was dismissed for untimeliness under Rule 33); *see Smith v. Smith*, 2010 WL 1416994, at *3 (N.D. Ohio Apr. 6, 2010) (same).

motion for leave to be "properly filed," Mock needed to comply with Rule 33(B) by demonstrating by clear and convincing evidence that he was unavoidably prevented from timely filing a motion for a new trial. *See Smith v. Smith*, 2010 WL 1416994, at *3 (N.D. Ohio Apr. 6, 2010).

But the trial court found, and the state appellate court affirmed, that Mock had failed to meet his burden and denied his motion for leave.  (Doc. No. 5-2, Exs. 56, 64.)  Because the state courts denied Mock's motion for leave and declined to allow Mock to file his motion for a new trial on timeliness grounds, his motion for leave was not "properly filed" within the meaning of Section 2244(d)(2).  *See Brown*, 2020 WL 1536603, at *3; *see Fortson v. Eppinger*, 2016 WL 11259032, at *21–22 (N.D. Ohio Nov. 21, 2016), *report and recommendation adopted*, 2017 WL 603086 (N.D. Ohio Feb. 15, 2017) (finding motion for new trial based on newly discovered evidence not "properly filed" because the state court denied it as untimely); *see also Baker v. Hunsinger-Stuff*, 2023 WL 6379759, at *2 (6th Cir. Sept. 1, 2023) (finding defendant's application to re-open state appeal not "properly filed" where state court denied it as untimely); *Davis*, 900 F.3d 315, 324 (6th Cir. 2018).

In his Objections, Mock argues that the state trial court erroneously concluded that he failed to meet his burden of demonstrating that he was unavoidably prevented from obtaining his newly discovered evidence.  But a federal court sitting in habeas review must defer to the state courts' judgment on issues of state procedural law, including a state court's denial of collateral postconviction relief based on the defendant's failure to timely seek it.  *Vroman*, 346 F.3d at 603; *see also Davis*, 900 F.3d at 324; *Anderson*, 2010 WL 1387504, at *3.

However, assuming *arguendo* that Mock's motion for leave *was* properly filed, the Court agrees with the Magistrate Judge that Mock's Petition is nevertheless untimely.  Following the completion of Mock's direct review on September 5, 2018, 100 days had lapsed by the time Mock

filed his motion for leave on December 14, 2018.  Thus, because the Section 2244(d) time for filing a habeas petition could have been tolled, the time was paused on December 14, 2018, leaving 265 days for Mock to file his Petition once the proceedings regarding his motion for leave concluded.

The proceedings concerning his motion for leave undisputedly concluded on June 8, 2021, when the Supreme Court of Ohio declined to accept jurisdiction of Mock's appeal of the denial of his motion for leave.  (Doc. No. 5-2, Ex. 72.)[12]  From the next day, Mock would have then had 265 days, or until March 1, 2022, to initiate his habeas proceedings.  Because Mock did not file his Petition until June 1, 2022, three months later, Mock's Petition still falls outside the one-year limitations period even if Section 2244(d)(2)'s statutory tolling applies.  *See Scarber v. Palmer*, 808 F.3d 1093, 1096 (6th Cir. 2015) ("[A] state prisoner cannot toll the statute of limitations at will simply by filing untimely state postconviction petitions.") (original alteration and quotation marks omitted) (citing *Pace*, 544 U.S. at 413).

Accordingly, under Section 2244(d)(1)(A),[13] Mock's Petition is untimely, and Mock is not entitled to statutory tolling under Section 2244(d)(2).

### b.      Section 2244(d)(1)(D)

As noted above, under Section 2244(d)(1)(D), the AEDPA's one-year limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been

---

[12] As the Magistrate Judge correctly concluded, the 90-day period for seeking certiorari with the United States Supreme Court is not included for purposes of determining the tolling period under Section 2244(d)(2).  (Doc. No. 15 at PageID# 3071 n.9.) *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007); *see also Foster v. Bobby*, 2010 WL 1522484, at *2 (N.D. Ohio Apr. 15, 2010).

[13] Statutory tolling under Section 2244(d)(2) is only relevant to 2244(d)(1)(A) because Section 2244(d)(1)(A) is the only subsection of Section 2244(d)(1) that can serve as a benchmark for the one-year limitations period. As discussed below, Mock has not shown that he is entitled to a later start date under Section 2244(d)(1)(D), and therefore, statutory tolling would not apply to that section.

discovered through the exercise of due diligence." 28 U.S.C. 2244(d)(1)(D). *See also Willis v. Jones*, 329 F. App'x 7, 16 (6th Cir. 2009). Under this section, courts examine "'when a duly diligent person in petitioner's circumstances would have discovered' the factual predicate for his claim." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) (quoting *DiCenzi v. Rose*, 452 F.3d 365, 370 (6th Cir. 2006)).[14] "The only operative question in such an inquiry is when the person was *aware* of the vital facts for his claim, not when he understood the legal significance of those facts." *Id.* (citing *Webb v. United States*, 679 F. App'x 443, 448 (6th Cir. 2017)) (emphasis added); *Person v. Clipper*, 2019 WL 1644239, at *9 (N.D. Ohio Jan. 23, 2019), *report and recommendation adopted*, 2019 WL 1640762 (N.D. Ohio Apr. 16, 2019) (finding that AEDPA's limitations period begins to run under Section 2244(d)(1)(D) "when a habeas petitioner knows, or through due diligence, could have discovered, the important facts for his or her claims") (citing *Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003)). Thus, courts in the Sixth Circuit have held that Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Redmond*, 295 F. Supp. 2d at 771. As the petitioner, Mock must demonstrate that Section 2244(d)(1)(D) applies. *DiCenzi*, 452 F.3d at 471.

The Magistrate Judge found that Mock is not entitled to a later start date under Section 2244(d)(1)(D) because Mock fails to show that this provision applies. (Doc. No. 15 at PageID#s 3071–74.) Specifically, the Magistrate Judge concluded that Section 2244(d)(1)(D) would not save any claim related to the jury notes" because Linda Head, Attorney Patterson's legal assistant, and Attorney Patterson would have had access to the notes in 2016. (*Id.* at PageID# 3072 n.11.) The

---

[14] The "diligence" standard under Section 2244(d)(1)(D) is a federal standard, and is distinct from the "unavoidably prevented" standard under Ohio's Rule 33(B). *See Cunningham v. Shoop*, 23 F.4th 636, 658 (6th Cir. 2022).

Magistrate Judge further determined that Mock did not offer any explanation about what delayed him or Attorney Patterson from speaking with Tammy Jordan, Brandon Fambro, or Attorney Yelsky from the completion of Mock's direct appeals in 2016 until 2018.  (*Id.* at PageID#s 3072–73.)  Therefore, the Magistrate Judge concluded that Section 2244(d)(1)(D) is inapplicable and cannot extend or restart the limitations period for Grounds One through Four.  (*Id.* at PageID#s 3069, 3074.)[15]

Mock objects to this conclusion and submits that Section 2244(d)(1)(D) does apply because the jury notes were "*ex parte*" communications he could not have discovered.  (Doc. No. 21 at PageID#s 3227–28.)  Mock further asserts that Grounds One through Four are based on *Brady* and are therefore "not subject to the diligence standard."  (*Id.* at PageID# 3222.)[16]  According to Mock, the "factual predicate of the claim(s)," i.e. the jury notes and the information allegedly revealed by the affidavits of Jordan, Fambro, and Attorney Patterson, can still not be determined because the State has failed to provide the evidence Mock requests, and therefore the statutory limitations period under Section 2244(d)(1)(D) has yet to be triggered.  (*Id.*)  For the following reasons, the Court disagrees.

As to the jury notes, the record shows that the state trial record had been available to Mock since November 7, 2016, when the trial court sent the record to the appellate court.  (Doc. No. 5-2, Ex. 77 at PageID# 1796.)  Head conducted her review at some point in 2018, and asserted in her

---

[15] The Magistrate Judge also found that to the extent that Ground Three, which concerns Mock's ineffective assistance of trial counsel claim, also challenges the trial court's denial of his motion to suppress, such a claim is not cognizable on habeas review.  (Doc. No. 15 at PageID# 3071 n.10.)  In his Objections, Mock does not argue that Ground Three presents a challenge to the trial court's denial of his motion to suppress.  (Doc. No. 21 at PageID# 3233.)  Instead, Mock merely argues that the state courts "denied him a full and fair opportunity to litigate his search-and-seizure claim."  (*Id.* (citation omitted).)  Because the Court concludes that Ground Three is untimely, the Court need not reach the issue of whether Mock can challenge the trial court's denial of his motion to suppress on habeas review.

[16] Mock includes this argument with his objections pertaining to the Magistrate Judge's recommendation that Ground Five be dismissed as not cognizable.  (Doc. No. 21 at PageID# 3215.)  Because Mock is *pro se*, the Court construes his Objections liberally and associates his arguments with the R&R's relevant conclusions and discussions as appropriate.

affidavit that she had been hospitalized due to illnesses and was therefore delayed in completing her review.  (*Id.*, Ex. 51 at PageID# 1198.)  However, as the appellate court concluded, Head did not explain why she or Attorney Patterson failed to investigate the record, and thereby uncover the jury notes, from November 7, 2016, until Head was hospitalized in 2018.  (*Id.*, Ex. 64 at PageID# 1651.)  The record indicates that the jury notes were available to, and could have been discovered by, Head from November 2016 until her hospitalization over a year later.  Head's hospitalizations in 2018 accordingly do not establish diligence in establishing the factual predicate—here, the jury notes—for Grounds One through Four.

Mock argues that the jury notes between the trial judge and the jury were "*ex parte*" communications that he could not have known about.  (Doc. No. 21 at PageID#s 3227–28.)[17]  This argument is unpersuasive.  Putting aside the issue of whether these jury notes were impermissible *ex parte* communications, at the very latest, Mock certainly knew about the jury notes beginning in August 2018 when Head discovered them in the record.  (Doc. No. 5-2, Ex. 51 at PageID#s 1198–99.)  And although Head does not indicate precisely when she located the jury notes, in her affidavit, Head averred that the records that contained the jury notes were "kept on file with the Clerk of Court's for the Cuyahoga County Eighth Appellate District, Court of Appeals."  (*Id.* at PageID# 1198.)  Indeed, as the state proceedings docket sheet indicates, the jury instructions and jury questions were filed, along with the transcript of proceedings, on November 7, 2016.  (*Id.*, Ex. 77 at PageID# 1796.)

---

[17] Mock also cites to his "multiple motions for discovery" as evidence of his diligence.  (Doc. No. 21 at PageID# 3215.)  Mock does not explain how these motions for discovery, filed in state court, demonstrate his diligence in reviewing the trial record to locate the jury notes or interviewing Jordan, Fambro, or Attorney Yelsky.  Accordingly, these motions for discovery do not support Mock's claim of diligence.

Nevertheless, neither Head, nor Attorney Patterson, nor Mock mentioned the jury notes until Mock's motion for leave was filed over two years later.

According to Mock, "the jury notes were not marked part of the trial transcript exhibit package," and therefore the jury notes were not part of the trial record until he filed his motion for a new trial. (Doc. No. 21 at PageID# 3219.) This explanation is insufficient to demonstrate diligence. Mock does not provide any evidence to show that the jury notes were excluded from any "trial transcript exhibit package." Indeed, Mock effectively concedes that the jury notes *were* available, but insists that they were "just placed effectively hidden in the boxes after direct appeal." (*Id.*) In contrast, Head averred that she was able to and *did* discover the jury notes in the trial record. Mock does not offer any explanation as to why the jury notes, while "hidden" in the trial court boxes on direct appeal, could not have been discovered until he filed his Rule 33(B) motion. Therefore, Mock has not demonstrated that he could not have discovered the factual predicate for two years, from the date the trial record was provided to the appellate court until Mock filed his motion for leave. Accordingly, Section 2244(d)(1)(D) does not toll the statutory limitations period as to Mock's claims concerning the jury notes.

As to the search warrants and phone records, and Jordan, Fambro, and Attorney Patterson's affidavits relating thereto, the Court rejects Mock's argument that alleging a *Brady* violation disposes of the requirement to diligently discover evidence under Section 2244(d)(1)(D). Mock only cites to *Brady*, *Banks v. Dretke*, 540 U.S. 668 (2004), and *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990) to support his argument. But none of these cases dealt with or considered Section 2254 habeas petitions, let alone the diligence standard under Section 2244(d)(1)(D). And although *Banks* rejected a rule declaring "prosecutor may hide, defendant must seek," 540 U.S. at 696, the State's *concealment*

is not at issue.  Mock alleges that he and Attorney Patterson conducted interviews with Jordan, Fambro, and Attorney Yelsky, which revealed the State's alleged falsifications.  There is no suggestion here that the State concealed this information or its source prior to trial.  *See Ivory v. United States*, 2023 WL 1973198, at *8 (M.D. Tenn. Feb. 13, 2023) (distinguishing *Banks* in determining whether habeas petition was timely).  These cases do not relieve Mock of his obligation or duty to act with due diligence under Section 2244(d)(1)(D).

The Sixth Circuit has held that, for timeliness calculations under the AEDPA, "due diligence d[oes] not require [a petitioner] to ask the [S]tate if it had withheld *Brady* material *unknown* to him." *Willis v. Jones*, 329 F. App'x 7, 9 (6th Cir. 2009) (emphasis added).  But the Sixth Circuit also acknowledged that "a [S]tate could conceivably violate *Brady* in a way that would be easily discoverable by a duly diligent petitioner." *Id.* at 17.  The Court concludes that merely asserting a *Brady* violation does not absolve Mock of his responsibility to demonstrate diligence for the purposes of tolling the AEDPA's limitations period under Section 2244(d)(1)(D).  *Accord Minor v. Warden*, 2015 WL 1220548, at *4 (S.D. Ohio Mar. 17, 2015), *report and recommendation adopted*, 2015 WL 2365567 (S.D. Ohio May 15, 2015).  Accordingly, Mock's argument on the basis that the prosecutor's alleged *Brady* violation obviates the need for diligence is rejected.

Having determined that the mere assertion of a *Brady* violation does not indefinitely suspend Section 2244(d)(1)(D)'s diligence requirement, the Court concludes that Mock has not demonstrated diligence in seeking to uncover the *Brady* evidence.  Attorney Patterson only contacted Jordan, Fambro, and Attorney Yelsky beginning in March, May, and July 2018, respectively.  (Doc. No. 5-2, Ex. 51 at PageID#s 1153–57.)  But the record demonstrates that Mock knew of Jordan and Fambro's involvement in the case since they were mentioned at the suppression hearing on June 1,

2016.  (*Id.* at PageID# 1330.)  And in Mock's supplemental appellate briefing filed on May 4, 2017, Attorney Patterson referenced D.H.'s role as a "crucial witness" and one of Detectives Duffy and Witalis's confidential informants and acknowledged Attorney Yelsky's role as D.H.'s counsel of record.  (Doc. No. 5-1, Ex. 39 at PageID# 448–50.)  Indeed, Attorney Patterson, in arguing that Mock's trial counsel was ineffective, contended that trial counsel "failed to interview [D.H.], or interview her Counsel" and that trial counsel "could have inquired as to whether [D.H.] admitted to police that she committed these crimes," gave the name of "Ike" as her accomplice, and whether she was competent or coerced in making those statements."  (*Id.* at PageID# 450.)  Therefore, Mock and Attorney Patterson were aware of Attorney Yelsky and his potential knowledge of exculpatory information from D.H. at least a year before Attorney Patterson interviewed him.  Indeed, in his affidavit describing Attorney Yelsky's purported communications, Attorney Patterson averred that he had investigated Mock's case "for the purpose of raising the most viable issues *on direct appeal*." (Doc. No. 5-2, Ex. 51 at PageID# 1153 (emphasis added).)  Mock does not explain how or why Attorney Patterson was delayed in contacting these individuals, or why they could not have been contacted and their affidavits sought prior to March 2018.  Therefore, Mock has failed to demonstrate diligence in uncovering the alleged *Brady* evidence.

Mock's additional contention that the limitations period has yet to be triggered because the State has not provided the allegedly withheld evidence is also without merit.  As noted above, even if the State had withheld evidence in violation of *Brady*, the limitations period would have begun to run once Mock had discovered or knew about the withheld evidence.  *See Willis*, 329 F. App'x at 10 n.3 (rejecting some *Brady* claims based on, in part, "the evidence [being] within [petitioner's] knowledge before AEDPA's limitations period ran"); *see Ivory*, 2023 WL 1973198, at *8 ("Ivory

27

discovered the basis for his proposed *Brady* [] claim *despite* the Government's failure to provide information . . . ." (emphasis added)).

In this case, even if the Court assumes that the evidence Mock recites supports his *Brady* argument, and that, accordingly, Jordan, Fambro, and Attorney Yelsky's evidence could only have been obtained through the exercise of reasonable diligence by July 7, 2018, when the latest of them was discovered, thereby starting the one-year statutory limitations clock, Mock's Petition would still be untimely under Section 2244(d)(1)(D). The Magistrate Judge correctly calculated that 159 days had passed between July 8, 2018, and the day Mock filed his motion for leave on December 14, 2018. (Doc. No. 15 at PageID# 3074.) After the Supreme Court of Ohio declined to review Mock's appeal of the trial court's denial of his motion for leave on June 8, 2021, Mock still waited over 350 days from the next day to file his Petition on June 1, 2022. (Doc. No. 5-2, Ex. 72.) Thus, by the time Mock filed his Petition, the limitations period, even at the latest, would have expired several months earlier. In this circumstance, Mock's Grounds One through Four still would be untimely. *See Harris v. Schiebner*, 2022 U.S. App. LEXIS 31716, at *6 (6th Cir. Nov. 16, 2022) (affirming district court's dismissal of untimely habeas petition on ground that even if petitioner "discovered and obtained documentation supporting his alleged *Brady* claim in August 2018, as he alleged, and that the limitations period began to run on September 1, 2018, the limitations period ran for 165 days until February 12, 2019, when Harris filed his post-conviction motion; the limitations period was tolled until March 30, 2021, when the Michigan Supreme Court denied leave to appeal on post-conviction

review; and it expired 200 days later on October 16, 2021, four months before Harris's habeas corpus petition was filed").[18]

Accordingly, and for the reasons set forth above, Mock's Grounds One through Four are not entitled to a later start date under Section 2244(d)(1)(D) for either the jury notes or the search warrants and phone records.

### c.  Equitable Tolling

Because Mock's Rule 33(B) motion for leave was not properly filed and the statutory limitations period under Section 2244(d)(1)(A) therefore expired on September 5, 2019, the Court agrees with the Magistrate Judge that the Petition is nearly three years late and untimely under Section 2244(d)(1)(A) and Section 2244(d)(2).  Therefore, unless equitable tolling of this time gap is appropriate, Grounds One through Four of Mock's Petition are subject to dismissal as time-barred.

Although the Petition is not subject to statutory tolling sufficient to deem it timely filed, the AEDPA statute of limitations period is also "subject to equitable tolling in appropriate cases."  *See Holland v. Florida*, 560 U.S. 631 (2010); *Baker v. Hunsinger-Stuff*, 2023 WL 6379759, at *2 (6th Cir. Sept. 1, 2023).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). *See also Hall v. Warden*,

---

[18] As the Magistrate Judge concluded, Mock raises an ineffective assistance of trial counsel claim in Ground Three, which Mock raised on direct appeal but did not raise in his Rule 33(B) motion for a new trial.  (Doc. No. 15 at PageID# 3071 n.10; Doc. No. 5-1, Ex. 39 at PageID# 448.)  Therefore, according to the Magistrate Judge, review of an ineffective assistance of trial counsel claim is barred under Section 2244(d)(1)(A).  (*Id.*)  Mock does not object to this conclusion. Upon review of the record, Mock raised this issue in his direct appeals, which became final on September 4, 2018, but did not raise it in his Rule 33(B) motion for a new trial.  (*See* Doc. No. 5-1, Ex. 39; Doc. No. 5-2, Ex. 50.)  The Court finds that because Mock did not raise this claim in his motion for a new trial, Section 2244(d)(1)(A) does not extend his timeframe for direct review, and therefore, the claim is well-outside of the one-year limitations period.

*Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). However, the equitable tolling doctrine is granted by courts only "sparingly." *See Robertson*, 624 F.3d at 784. Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 560 U.S. at 649. *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 560 U.S. at 653. The Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See, e.g.*, *Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating that a court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Corr. Inst.*, 620 F. App'x. 417, 419 (6th Cir. 2015). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) (citation omitted).

The Magistrate Judge concluded that Mock is not entitled to equitable tolling of the AEDPA's statute of limitations because Mock fails to demonstrate that he acted with diligence in filing his Petition. (Doc. No. 15 at PageID# 3074–75.) Specifically, the Magistrate Judge found that even though Mock knew of the facts of which he complains when he initiated his Rule 33(B) proceeding in December 2018, he still waited three years to file his federal habeas Petition. (*Id.* at PageID#

30

3075.) The Magistrate Judge opined that Mock did not need to wait to file his Petition until the final resolution of his Rule 33(B) proceeding before the Supreme Court of Ohio, and instead could have filed a protective petition in federal court and asked this Court to stay and abey the habeas proceedings pending the outcome of the state court proceedings. (*Id.* at PageID# 3076.)

Mock objects to the Magistrate Judge's opinion finding that he is not entitled to equitable tolling since, according to Mock, the State committed prosecutorial misconduct by "not provid[ing] the material evidence required for a full and fair opportunity for Petitioner to litigate merits." (Doc. No. 21 at PageID#s 3219–20.) Mock contends that he was required to investigate and obtain evidence of the State's misconduct, including by filing his discovery motions in state court, during which the time to file his Petition expired. (*Id.* at PageID#s 3221–22.) According to Mock, if the State had not committed misconduct, his "diligent" and "fruitful" investigation would not have been needed. (*Id.* at PageID# 3222.)

The Court agrees with the Magistrate Judge. As the Magistrate Judge concluded, Mock was aware of all the facts supporting his *Brady* and other prosecutorial misconduct claims—that the State withheld or falsified evidence pertaining to Jordan, Fambro, and Attorney Yelsky—by, at the very latest, December 2018 when Mock filed his motion for leave in state court. (Doc. No. 15 at PageID# 3075.) Mock does not argue or assert that he has, since he filed his motion for leave in state court, uncovered any additional evidence that would support his *Brady* or other prosecutorial misconduct claims. Mock only requests phone records, D.H.'s proffer letter, and the photo line-up/array, all which Mock referenced and accused the State of failing to provide in his motion for leave. Additionally, because the state courts denied Mock's motion for leave, thereby declining to allow Mock to file a motion for a new trial on the basis that it would be unjustifiably untimely, it cannot be

31

said that Mock demonstrated diligence in pursuing his rights. *See Franklin v. Brunsman*, 2013 WL 1500678, at *7 (N.D. Ohio Mar. 22, 2013), *report and recommendation adopted*, 2013 WL 1501033 (N.D. Ohio Apr. 10, 2013) (finding no diligence for equitable tolling where state court denied motion for a new trial and motion for other post-conviction relief as untimely); *see also Briscoe v. Eppinger*, 2017 WL 9476850, at *7 (N.D. Ohio Oct. 30, 2017), *report and recommendation adopted*, 2017 WL 6496526 (N.D. Ohio Dec. 18, 2017) (concluding that petitioner did not satisfy equitable tolling diligence burden where he "did not pursue his state-court remedies [including a motion for a new trial] in a diligent, timely manner" and his motion for a new trial was untimely).

Mock's suggestion that he needed to wait until the conclusion of his collateral attack in state court to file his habeas Petition in federal court is meritless. Mock insists that "ask[ing] for a stay and abey[ance]" as the Magistrate Judge suggested "would have been moot and irrelevant because there was a reasonable probability that [Mock] would have been granted relief and the indictment dismiss[ed] with prejudice. (Doc. No. 21 at PageID# 3213.) However, a petitioner's decision to proceed in state court, "rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence." *Vroman*, 346 F.3d at 605. In other words, the Magistrate Judge correctly observed that Mock should have filed a "protective" habeas petition in federal court and requested the court to stay the federal habeas proceedings while the state proceedings concluded. (Doc. No. 15 at PageID# 3076 (citing *Davis v. Bradshaw*, 900 F.3d 315, 324 (6th Cir. 2018)).) *See Davis*, 900 F.3d at 324 (finding petitioner's lack of knowledge as to whether Rule 33(B) motion was "properly filed" curable by the filing of a "protective petition," and petitioner's failure to do so "thus left everything riding on the adequacy of his state-court motion").

32

Mock nevertheless asserts that, if the state courts had "given [him] a chance to address the affidavits and issues of police and prosecutor misconduct," he "would have been timely in all aspects." (Doc. No. 21 at PageID# 3213.)  But the State courts did give him a chance to move for a new trial under Rule 33(B)—Mock failed to timely take advantage of this chance and instead waited several months, without sufficient explanation, to seek leave to file a motion for a new trial.  Mock fails to even explain why he waited nearly a year from the conclusion of his Rule 33(B) proceedings to file a Petition in this Court.  *Jurado*, 337 F.3d at 643–45 (finding equitable tolling under AEDPA not applicable where petitioner failed to demonstrate diligence in waiting 19 months to file petition).

Lastly, Mock references his multiple requests for supplemental discovery in state court as evidence of his diligence.  (Doc. No. 21 at PageID# 3221.)  But even if these requests for supplemental discovery constituted diligence for equitable tolling purposes, Mock still fails to demonstrate that an "extraordinary circumstance" made it "impossible" to file a petition in federal court in a timely manner.  *Kline*, 2023 WL 8367769, at *5; *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (holding that "mental incompetence or incapacity may provide a basis for equitable tolling"); *Jones v. United States*, 689 F.3d 621 (6th Cir. 2012) (facility transfers, medical treatment, and separation from legal materials in "combination" constituted extraordinary circumstances); *Price v. Lewis*, 119 F. App'x 725, 727 (6th Cir. 2005) (citation omitted).  Therefore, Mock's numerous efforts in state court to collaterally attack his conviction and sentence do not establish diligence to warrant equitable tolling in this case.  Accordingly, equitable tolling does not apply and Mock's Grounds One through Four are time-barred.[19]

---

[19] Mock also requests that the Court remand the R&R back to the Magistrate Judge so that the Magistrate Judge can rule on the merits of Mock's Petition.  (Doc. No. 21 at PageID# 3233.)  As the Court has concluded, because Mock's Grounds One through Four are time-barred, there is no need to review the merits of these claims.  *See Fortson v. Eppinger*, 2016

### d.    Procedural Default

In his Objections, Mock construes the Magistrate Judge's conclusion that Grounds One through Four are time-barred as a procedural default. Mock objects to this Magistrate Judge's conclusion by addressing the four-prong test outlined in *Maupin*.[20]   (*Id.* at PageID# 3224 (citing *Maupin*, 785 F.2d 135).)   As noted above, under *Maupin*, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Maupin*, 785 F.2d at 138–39.

Mock agrees that Ohio Crim.R. 33 is a procedural rule applicable to motions for a new trial or leave to file such motions, but objects to the Magistrate Judge's application of prongs three and four of the *Maupin* test.  (Doc. No. 21 at PageID# 3224.)  The Court addresses the disputed *Maupin* prongs, in turn, below.

As to the third *Maupin* prong, where a state court declines a prisoner's federal claim because the prisoner failed to meet a state procedural requirement, federal habeas review is barred if the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*,

---

WL 11259032, at *38 (N.D. Ohio, Nov. 21, 2016), *report and recommendation adopted*, 2017 WL 603086 (N.D. Ohio Feb. 15, 2017).

[20] Although the Magistrate Judge did not explicitly deem Mock's untimely Rule 33(B) motion as procedurally defaulted, courts in the Sixth Circuit appear to consider a state court's denial of a motion as untimely as a procedural default.  *Petrone v. Bunting*, 2015 WL 9918661, at *13 (N.D. Ohio Dec. 10, 2015), *report and recommendation adopted*, 2016 WL 320265 (N.D. Ohio Jan. 27, 2016) (". . . Ohio Crim R. 33 constitutes a firmly established Ohio procedural rule capable of providing the basis for a finding of procedural default, ground four like ground two before it is defaulted.") (collecting cases); *Roach v. Robey*, 2024 WL 731107, at *2 n.2 (6th Cir. Feb. 22, 2024) (contemplating that state court's denial of claim as untimely "would normally be a procedural default, and Roach would need to persuade us to excuse it").

501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732–33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). For the following reasons, the Court finds that Rule 33(B) is an adequate and independent state law ground for relief.

Mock "objects to the magistrate's acceptance of [Rule 33] under [this] prong."[21] (Doc. No. 21 at PageID#s 3224–25.) Mock first insists that Rule 33 is not an "independent state ground to foreclose relief in prong 3" because the state court's denial based on that rule is not independent of the merits of his federal claims. (*Id.* at PageID# 3225 (quotation marks omitted).)

This argument is conclusory. As noted elsewhere, the state trial court denied Mock's Rule 33(B) motion for leave solely on the ground that Mock had failed to demonstrate that he was unavoidably prevented from timely filing a motion for a new trial under Rule 33(B). In doing so, the trial court applied only state law and did not rely on his constitutional *Brady* and similar assertions. (Doc. No. 5-2, Ex. 56.) Several courts throughout the Sixth Circuit have concluded that, where an Ohio state court denies a Rule 33(B) motion on the ground that it is untimely under state law, Rule 33(B) is an adequate and independent state law ground foreclosing federal habeas relief. *See, e.g.*,

---

[21] Mock argues that this contention relates to the Magistrate Judge's "acceptance of the rule under prong 2" of *Maupin*. (Doc. No. 21 at PageID# 3224.) However, whether the state court "went against its prior precedents" is inconsequential as to whether the state court enforced the procedural time-bar in Rule 33(B). Rather, this argument is more appropriately related to the third *Maupin* prong and is discussed accordingly.

In any event, the Court rejects Mock's suggestion that the trial court did not actually enforce Rule 33(B)'s procedural bar. The state trial court unequivocally enforced Rule 33(B) as a state procedural sanction when it thoroughly explained the reasons why it concluded that Mock's motion was untimely, i.e., that he failed to demonstrate, by clear and convincing evidence, that he could not have learned of the existence of the alleged *Brady* evidence supporting his Rule 33(B) motion within the 120-day timeframe. (Doc. No. 5-2, Ex. 56.) *See Petrone v. Bunting*, 2015 WL 9918661, at *13 (N.D. Ohio Dec. 10, 2015) *report and recommendation adopted*, 2016 WL 320265 (N.D. Ohio Jan. 27, 2016).

*Petrone*, 2015 WL 9918661 at *10–11; *Davis v. Bradshaw*, 2016 WL 8257676, at *39–40 (N.D. Ohio June 16, 2016), *report and recommendation adopted*, 2017 WL 626138 (N.D. Ohio Feb. 15, 2017) (collecting cases); *Anderson*, 2010 WL 1387504, at *9–10 ("The standards for consideration of delayed motions for new trial are clear, and allow minimal discretion, while enabling facile appellate oversight over the decision to allow or disallow."); *Veliev v. Warden, Chillicothe Corr. Inst.*, 2014 WL 4805292, at *11–12 (S.D. Ohio Sept. 26, 2014) (collecting cases). Mock only maintains that the trial court's denial of his Rule 33(B) motion "was a misapplication and unreasonable application of federal law regarding diligence." (Doc. No. 21 at PageID# 3225.) As discussed above, however, Mock's arguments regarding the federal diligence standards (whether under Section 2244 or otherwise) are meritless. Mock does not explain how the trial court otherwise misapplied the federal diligence standard, and therefore Mock's argument is rejected.

Mock next argues that Rule 33(B) is not an adequate state ground because of the reviewing court's "inconsistent application of the rule" and because the "state reviewing court went against its prior precedents," citing *State v. Phillips*, 95 N.E.3d 1017 (Ohio App. 8th Dist. 2017), as an example of one of the precedents that the state court contravened. (Doc. No. 21 at PageID# 3225 n.3.) Mock cites a passage from *Phillips* that suggests that, "[i]n general, courts do not fault the defendant for failing to discover evidence of prosecutorial misconduct that would amount to a *Brady* violation." (*Id.* (citing *Phillips*, 95 N.E.3d at 1025).) This passage refers to when a defendant is entitled to a *hearing* on an unavoidable delay in filing a motion for a new trial. However, in the very next paragraph, the court in *Phillips* acknowledged that, in deciding whether to grant leave for a defendant to file a motion for a new trial, the state court must determine "whether the [defendant] met his burden of clearly and convincingly showing that he was indeed unavoidably prevented from discovering the

36

evidence." *Id.* The defendant's satisfaction of this burden, as the *Phillips* court recognized, "depends on a number of factors and circumstances, including *whether the person should have been aware of the potential* Brady *violation at a sooner date.*" *Id.* (emphasis added).

In this case, the state trial court concluded that Mock should have been aware of the *Brady* violations concerning the affidavits of Jordan, Fambro, and Attorney Patterson at an earlier date and within the 120-day period provided by Rule 33(B). (Doc. No. 5-2, Ex. 56.). The state trial court further found that Mock had failed to show that he was unavoidably prevented from timely filing a motion for a new trial. (*Id.*) The state court's denial of Mock's motion for this reason was expressly contemplated by *Phillips*, and therefore, the state court did not act in contravention of the precedent Mock cites. "Absent 'extreme circumstances' where it appears that the state court's interpretation is 'an obvious subterfuge to evade consideration of a federal issue,' this Court is bound by the state courts' definition of its own rules." *Veliev*, 2014 WL 4805292, at *13 (quoting *Bennett v. Warden, Lebanon Corr. Inst.*, 782 F. Supp. 2d 466, 478 (S.D. Ohio 2011)). Mock has not shown any "extreme circumstances" or that the state courts' application of Rule 33 is contrary to Ohio precedent.[22]

As to the last prong of *Maupin*, Mock argues that he has established cause for any procedural default based on the State's alleged *Brady* violations. (*Id.*) This argument fails as well. A petitioner

---

[22] Mock finally requests that the Court address his objection that the state procedural bar was inadequate "under the federal standard set forth in *Lee v. Kemna*, 534 U.S. 362 (2002)." (*Id.* at PageID# 3228.) *Lee* does not support his position. *Lee* generally stands for the principle that "[w]hat constitutes an adequate [state] procedural rule is a question of federal law." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). Mock does not apply *Lee* or discuss or explain how *Lee* supports the conclusion that Rule 33(B) is an inadequate state procedural rule. Instead, Mock contends that "[t]here can be no greater example of a denial of a state court filing, claimed to be a state procedural bar, resulting in a violation of a petitioner's constitutional rights," and that the trial court "put procedure over substantial rights." (Doc. No. 21 at PageID# 3228.) But Mock fails to explain how his procedure-over-substantial rights argument is relevant to the adequacy analysis. Accordingly, Mock has not demonstrated that *Lee* supports his Petition or his Objections in any way.

may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. As discussed thoroughly above, Mock has failed to demonstrate or explain his two-year delay between his conviction and his "discovery" in early and mid-2018 of the jury notes or the alleged factual predicate for his *Brady* claim (i.e. the affidavits of Jordan and Fambro and Attorney Patterson's affidavit outlining his conversation with Attorney Yelsky), and thereafter the delay in filing his motion for leave several months later. Accordingly, Mock has not demonstrated cause for the procedural default of his claims, and Mock's objections concerning any procedural default of his Rule 33(B) arguments are overruled.[23]

### 2. Ground Five

The Magistrate Judge first recommended that Grounds Four and Five[24] be dismissed as non-cognizable because challenges to post-conviction proceedings are outside the scope of federal habeas review. (Doc. No. 15 at PageID#s 3076–78.) According to the Magistrate Judge, state collateral challenges to post-conviction proceedings cannot be brought under Section 2254, and "merely

---

[23] Additionally, a state court ruling on an issue of state law may constitute a due process violation if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (citation omitted). As the Magistrate Judge concluded, Mock has failed to argue, even in his Objections, beyond conclusory allegations, that the trial court's denial of his Rule 33(B) motion resulted in fundamental unfairness.

[24] Although the R&R contains this analysis in a section labeled only "Ground Five," the Magistrate Judge noted that, to the extent Ground Four challenges the state court's denial of his motion for a new trial, his recommendation pertaining to Ground Five would apply to Ground Four as well. (Doc. No. 15 at PageID# 3076 n.13.) Because both Ground Four and Ground Five raise a challenge to the state court's denial of Mock's Rule 33(B) motion for failure to show unavoidable delay, the Court considers both Ground Four and Ground Five in this analysis.

invoking a constitutional provision" is insufficient "to turn a state-law issue into a constitutional question."  (*Id.* at PageID#s 3076–77.)

Mock does not make a specific objection as to whether a federal court on habeas review can determine whether an Ohio state court misapplied Ohio state law in denying a defendant's motion for leave to file a motion for a new trial.

The Court agrees with the Magistrate Judge.  "A claim of error in a post-conviction proceeding," including a challenge to a state court's denial of a post-judgment motion for leave to file a delayed motion for a new trial, is "not cognizable in a federal habeas corpus action."  *In re Hill*, 2021 U.S. App. LEXIS 26072, at *4 (6th Cir. Aug. 27, 2021) (citing *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007)).  In this case, the state trial court, affirmed by the appellate court, denied Mock's motion for leave and declined to allow him to file a motion for a new trial on a purely state procedural ground, i.e. timeliness.  (Doc. No. 5-2, Ex. 56.)  Accordingly, the Court finds no clear error with the Magistrate Judge's recommendation that Mock cannot challenge the state courts' denial of his motion for leave solely on state law grounds.[25]

---

[25] Mock does contend that "*ex parte* communication by the trial court to the jury cannot be considered under harmless error" and is "surely a Federal constitutional claim which is cognizable" on habeas review.  (Doc. No. 21 at PageID#s 3228, 3234.)  This contention is meritless.  Mock does not identify a specific constitutional right upon which a challenge to *ex parte* communications can be based.  In his Petition, Mock references the Fifth, Sixth, and Fourteenth Amendments and claims that the trial judge's communications deprived him of notice and opportunity to be heard, which is a due process violation.  (Doc. No. 1 at PageID# 24.)  But Mock does not discuss the contents of the jury notes or their effect on the jurors other than to say that, as described above, the trial judge used them to "sway" the jury.  And while some courts have acknowledged that truly *ex parte* communications between a trial judge and the jury can be concerning, there is no immediate reversible error from the mere fact that the trial judge made an *ex parte* communication with the jury.  *See United States v. Paul*, 57 F. App'x 597, 604 (6th Cir. 2003) ("[E]ven if a judge improperly participates in ex parte communications [with the jury], such communications will not necessarily constitute reversible error. . . . There must be a reasonable possibility that the ex parte communications affected the verdict."); *Peoples v. Lafler* 743 F.3d 503, 518–19 (6th Cir. 2013).  Mock's contention is conclusory, is not supported by any evidence, and is rejected.

The Magistrate Judge further found that, even if Grounds Four and Five were cognizable, Mock had failed to explain why the state court's requiring him, under Ohio Rule of Criminal Procedure 33(B), to make a showing by "clear and convincing evidence" that he was "unavoidably prevented" from timely filing his motion for a new trial would offend fundamental fairness or otherwise violate his due process rights.  (Doc. No. 15 at PageID#s 3078–79.)

In his Objections, while Mock concedes that he sought leave to file a motion for a new trial "beyond the 120-day time limit" for filing a motion for a new trial, he insists that he could not have known about the evidence he acquired because the State improperly suppressed it.  (Doc. No. 21 at PageID# 3230.)  Mock recites his *Brady* allegations as an example of how the State deprived him of fundamental fairness.  (*Id.* at PageID# 3232.)  Mock thus appears to argue that the State's alleged *Brady* violation means that the state court's denial of his motion for leave denied him fundamental fairness.

Mock's contentions are rejected.  As mentioned throughout this Memorandum Opinion and Order, the state courts applied the clear and convincing and "unavoidably prevented" standard set forth in Rule 33(B) for adjudicating motions for a new trial filed beyond the 120-day timeframe allocated by the same rule.  Here, Mock must show that application of Rule 33(B) was fundamentally unfair.  Mock fails to do so.  Mock does not explain how the State courts concluding that he failed to demonstrate that he was unavoidably prevented from timely filing his evidence based on the existing trial record, availability of witnesses Jordan and Fambro, and knowledge of D.H.'s counsel Attorney Yelsky, would violate fundamental fairness.  *Walker v. Schweitzer*, 2020 WL 981431, at *14–15 (N.D. Ohio Feb. 7, 2020), *report and recommendation adopted sub. nom.*, *Walker v. Owens*, 2020 WL 977965 (N.D. Ohio Feb. 28, 2020).  The fact that Mock's motion for leave was based on *Brady*

violations does not, without more, meet this burden, and Mock does not develop this argument further.  Accordingly, this argument is rejected.

Mock further argues that the state trial judge "went against his own jury instructions," and that this failure to "follow its own instructions regarding the procedures relating to the jury deliberation process" was "irregular." (Doc. No. 21 at PageID#s 3226–27.)  Mock further argues that the trial judge should have recused himself, implying that the judge was biased based on his "answering and swaying the jury's verdict towards guilty." (*Id.* at PageID# 3212.)

This argument is also rejected.  Mock does not explain how the trial judge's original jury instructions conflict with the procedure the trial judge used to communicate with the jury during trial. (*See* Doc. No. 21 at PageID#s 3226–27.)  Mock only cites to the trial judge's instructions to the jury and then generally claims that the trial judge "went against his own instructions" outside the presence of Mock or his counsel.  (*Id.* at PageID# 3226.)  During trial, the trial judge did indeed explain to the jury that, if a juror had a question during deliberations, the trial judge would "discuss it with the counsel."  (Doc. No. 5-2 at PageID# 2460.)  And if Mock's contention that the trial judge did not speak with Mock's counsel is correct, it might appear that the trial judge did not abide by his own instructions.  Nevertheless, Mock fails to frame the trial judge's actions as presenting any federal constitutional violation.  Mock's further contention that the trial judge should have recused himself and that he committed "judicial misconduct" does not reference or cite to any evidence in the record of bias or malintent on behalf of the trial judge or any juror.  (Doc. No. 21 at PageID# 3212; Doc.

No. 1 at PageID# 24.)  Accordingly, Mock's arguments concerning the trial judge's conduct in Ground Five are rejected.[26]

Mock has not demonstrated that the Magistrate Judge erred in concluding that Grounds Four and Five are not cognizable, or that Mock failed to demonstrate that the state courts violated fundamental fairness.  Accordingly, Mock's objections as to the Magistrate Judge's recommendation that Grounds Four and Five be dismissed are overruled.

**IV.    Conclusion**

For the foregoing reasons, Mock's Objections (Doc. No. 21) are OVERRULED.  The Magistrate Judge's R&R (Doc. No. 15) is ADOPTED as set forth herein, and Mock's Petition (Doc. No. 1) is DISMISSED.  In addition, Mock has not sufficiently demonstrated the need for an evidentiary hearing or for the State to complete the record and Mock's requests for the same are denied.  (Doc. Nos. 21, 22.)  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**


                                             *s/Pamela A. Barker*
                                             PAMELA A. BARKER
Date:  May 22, 2024                          U. S. DISTRICT JUDGE

---

[26] Mock also argues that the state trial court's denial of his motion for a new trial "was a ratification of the State's misconduct."  (Doc. No. 21 at PageID# 3224.))  Mock does not develop this argument beyond this conclusory sentence.  Accordingly, the Court rejects this argument.

42